There's all this technology all ready for me here. Okay, first, Lewis. Mr. Lewis. Good morning. Good morning, Your Honor. You may proceed. May it please the Court. Mr. Clerk, Mr. Eggert, Ms. Saunders. My name is Ian Lewis, and I represent the appellant, Martinez Sayles. The issue today is that we believe the district court abused its discretion when it rendered an 85-month sentence, a sentence we believe to be greater than necessary, under 3553A. The point that I'd like to make with my time today is that it is our position that the government has conceded this point to us. As evidenced by their response brief, specifically the second point of their response brief, in this case the co-defendant was rendered an enhancement for being the manager, leader, and organizer of this scheme, an enhancement that my client did not receive. However, they both received the same 85-month sentence. The government's point is that the co-defendant cannot show harm to his substantial rights because he got the enhancement, however, he got the same sentence as my client. Now, I'm not here to argue whether or not that point is correct or not, but if the co-defendant's substantial rights were not affected, then my client's rights were substantially affected because it's almost like a law school question. Two twins commit the same crime, have essentially the exact same criminal history regarding points, but it's not actually what they did in the past. If there's one variable, which is the enhancement for being a manager, leader, or organizer, what type of sentence should they receive? And the answer would never be the same. My client should get the benefit for not being the manager or organizer. I think the government states in their brief... ...logic of your argument, not that they conceded the issue. Exactly, Your Honor. Exactly, Your Honor. The government states that the enhancement would have made my client more similar, not less than the client, therefore supporting the district court's argument of proportionality. Well, the sentence your client got was substantially higher percentage-wise. Yes. But here you have, you know, the discretion that the Supreme Court has told us we have to give to the district court. The only thing that...well, not the only thing, but one thing that bothered me was is the district court really didn't explain why these sentences were the same. I mean, it could be that he thought that maybe he gave too low a sentence to the other co-defendant. He would have always given that sentence to your client. So, you know, what's your...do you have a position or an argument on what the district court was doing here? Thank you, Your Honor. Yes, I do. But your client was sentenced first. Yes. Yes, and I think that... So the district court could not determine. We don't know whether it had an idea of what it would do later in the day. I assume they were scheduled, so he knew they were going to be more or less sequential. Yes, and I do have an argument. Your Honors, a 566% increase, I don't think any would argue, is not extraordinary. It's extraordinary, and it needs to be supported by extraordinary facts. And the court is correct. I do not know. I do not know what the district court was thinking when it rendered such an increase. And that's why I'm asking this court to remand this case for a resentencing. Now, what's your response to the argument about it's just a waste of time? We send it back. The district court makes its explanation. We're in the same place. You know, and I understand that argument. However, I don't believe in under any rubric, even if I know the district court does not have to follow the 4A1 enhancements for criminal history. But even under the we need some sort of logical fact to get us to a 13-level increase, there isn't one. The district court speaks about my client's criminal history and then rephrases it as, well, we want to deter this kind of conduct because he's done it in the past. We want to protect the public because he's done it in the past. But it's the same factor. It's his criminal history.  And I do not believe that even under a guideline viewpoint that that one sentencing factor could justify such an increase, especially for a check fraud case in which the loss amount was under $6,000. For all these reasons, Your Honors, I'd ask the court to remand this case respectfully for resentencing to clear up this record. Thank you, Your Honors. Thank you. Ms. Sanders, good morning and thank you for your service of the Criminal Justice Act. The court always appreciates that. Good morning. You're welcome. May it please the court. Ruth Sanders for the appellant, Maurice Sales. Maurice Sales, unlike Martinez, pled guilty pursuant to a plea agreement. The relevant portions of that agreement here are, first, that the government agreed not to recommend a sentence outside of the recommended sentencing guidelines. And, second, that Maurice agreed he would not appeal his sentence unless it was outside the statutory range, unless it was an illegal sentence. The government now on appeal agrees that it breached the plea agreement because it argued it sentencing for more than an 85-month sentence for Maurice Sales. And Maurice, therefore, may appeal, if the government agrees, under a plain error standard of review. Maurice Sales is entitled to resentencing for at least three reasons. Let me stop you. If you were to persuade us that it was plain error, we didn't get that far in Lovelace. So we didn't reach the question in Lovelace. I don't understand why resentencing could conceivably be the appropriate relief. The relief would be he's allowed to withdraw from the plea agreement, right? I mean, what authority do you have that a breach of the plea agreement gives the defendant the right to his expectations when he pled? As opposed to just a, you know, a redo? Well, I think Santabello supports that to some extent. My thinking is simply that since— I don't remember that you talked about remedy. I haven't read it for a long time. Yeah, Santabello talks a little bit about the different remedies and putting the defendant in the position that he would have been in absent the breach. And since this breach only had to do with the sentencing recommendation, that's the basis of my argument there. Well, do you want to have the plea agreement set aside? Is that what you're looking for? I mean, what relief are you asking for? In the brief, we ask to have the sentence set aside for resentencing. He's not seeking to withdraw the plea agreement. I didn't—you'll have to speak up. I'm sorry. I believe in the brief we asked just— I know. I didn't hear the last part because I'm curious as to whether if we decide your only remedy would be withdrawing the plea, whether you want that remedy. Yes. Yes. I mean, if that's— There might be a— Sure, if that's the court's conclusion. But I believe that Santabello's— I believe that Santabello supports the— I understand that. Okay. Yeah. A plea agreement breach is a withdrawal—permission to withdraw. So you—okay. Yes. Okay. Either way, whatever we want, you want out of this sentence and you want it to go back. Yes, because, you know, the government believes—agrees that it breached the plea agreement, but the government is arguing that there was no—that the breach didn't affect Maurice Sale's substantial rights. And we believe that it did. The government argued that Maurice should receive at least the same sentence as his brother. And absent that argument, we believe that there's a reasonable probability he would have received a lesser sentence. Second, the sentencing court matched Maurice's sentence to Martinez's sentence in reliance on a clearly erroneous notion, namely that Martinez—that Maurice played a leading role in the conspiracy and Martinez did not. This, too, constituted plain error. The sentencing court stated it was balancing the positives and negatives of the brothers' conduct in their histories. But had the court realized that Martinez's conduct here was just as bad as Maurice's, there's a reasonable probability that Maurice would have received a lesser sentence. But you can still be—you can be the manager of an equally culpable conspirator, right? Yes. Yes. So why is it—why does the court finding them essentially of equal culpability mean you win this issue? Well, because the key to the first two arguments really is that on paper, these brothers had similar histories and different levels of involvement in the conspiracy. But in reality, Martinez, although they had the same—basically the same criminal history points and were in the same category, Martinez had made a career of check fraud. Maurice was not the professional that Martinez was. For—since 2001, according to Martinez's sentencing transcript, this is what he'd been doing for a living. In fact, the only reason that his offense level was not enhanced for engaging in this pattern of criminal conduct as his livelihood was because the government could not prove that he made at least a minimum wage over that time period charged. Okay. Let's go to the Olano fourth factor, which since he says we recognize plain error and give relief only when within our discretion. Why convince us? Why should we exercise our discretion to even pay any attention to it? Because the breach is—the government's breach of a plea agreement, first of all, is a serious matter. It reflects poorly on the criminal justice system as a whole, and it undermines public confidence in the criminal justice system. And practically speaking, an 85-month sentence is far outside the guideline range. It's over 100 percent over what the—what Maurice Sayles believed would be recommended by the government, and that undermines the plea bargaining process. Okay. What do you say to the argument that what the government recommends or not carries very little weight to district court, even in the plea agreements, as he says that, that the court's going to sentence what the court's going to sentence? And it's true that the government did not request an 85-month sentence in Martinez's case. But I believe that, you know, what we have to establish is that there is a reasonable probability that there would have been a different sentence, and I believe that there would have had the government not breached the plea agreement. I believe there is a reasonable probability. And that's because the difference in the brothers' criminal history has to do with the nature of the history. As I said, Martinez was a professional. This is what he'd been doing for a living. And Maurice simply—Maurice's criminal history, he had some driving while revoked. He had some marijuana possessions. He had some cases that were similar to this, but it was nothing compared to the level of involvement that Martinez had had over the years. And the court— Is that just based on the record, or was there some evidence that he lived apart, so to speak, from his twin? I'm sorry? Well, if your twin brother is a career fraudster and you don't have quite as many fraud convictions, that doesn't necessarily draw—that doesn't permit an inference that one is worse than the other. As a twin myself, Your Honor, I sort of disagree with that. I'm not a twin. I defer. A lot of time during this time, my understanding is a lot of this time they were living in separate towns. So that's in—there's some of this in the PSI. Yes, Your Honor. And this is discussed in both sentencing transcripts. Basically what I'd like to emphasize is that the government's breach of a plea agreement seriously affects the fairness, integrity, and the public reputation of the judicial proceeding. It's a very serious issue. And it doesn't need to be brushed aside here. Mr. Maurice Sales' substantial rights were affected by this, and Mr. Sales respectfully requests that he receive a new sentencing hearing, or if the court sees fit, that his plea be vacated and start over at square one. Okay. Thank you very much. Morning, Mr. Eagerton. Yes, Your Honor. Okay. You may proceed. Thank you. And you have some explaining to do here. I apologize? You have some explaining to do here why the government didn't live up to their bargain. First of all, the government's attorney, which was myself, made a mistake, a stupid mistake, which came at the light of two sentences that were held back-to-back. The first sentence which was held was the one for Martinez-Sales, in which the government, without a plea agreement in effect, argued for a guideline sentence. We argued for the high end of that particular range, which was 21 months. That sentence lasted for about an hour. We had an argument concerning enhancements that the court ruled against us, so that the court provided a sentence of 85 months, which was above the amount that the government recommended and above the guideline range. The government's position all throughout the case had been that the two defendants were almost identical in terms of their involvement and their activity. Martinez, if you've read the reports and you've read the briefs, was the person who actually obtained the checks that were to be used for the counterfeit purposes, but Maurice was the one that organized the people who actually went out and cashed the checks and collected the money. So they worked together, but in one respect, Maurice was the organizer of the conspiracy. He deserved the enhancement for leadership. But in every other respect, the government felt the two defendants were the same and should receive a similar sentence. That being said, there's no excuse, Your Honor. I've conceded it and I acknowledge the government's mistake, and I regret it tremendously because I suspect that if I had not made that mistake, we would not even be here. This case would not have been set for argument. But that being said, I go into the second argument after the judge has already sentenced a person that I believe is substantially similar to the second man to 85 months, and I fail to acknowledge or I fail to remember the plea agreement, my requirement that I had to ask for a sentence within the guideline range. That's my fault. I should have taken more care and not rushed into that second hearing to ask the court to oppose a proportional sentence. So that's a mistake, and I could understand the court may decide to teach a lesson to the prosecutor to remand, but the court doesn't have to. That's the point I made in my brief. We acknowledge that plate error took place, but plate error alone is not enough. As the Loveless case points out, you still have to show that the defendant's substantial rights were violated. There's been no credible argument made by the defendant in this case that his substantial rights were violated. The record is quite clear that Judge Case believed these two defendants to be equal in terms of their involvement and their culpability, and he made a quite lengthy record discussing the criminal activity of Maurice Sayles in defending his decision to give an enhancement to him of 85 months. And that's why I believe, Your Honors, that the case doesn't have to be remanded back because there has been no showing by the defendant, Maurice Sayles, that his substantial rights were violated. So that's my response to the first argument by the defendant, Maurice Sayles. I would also caution the court, or not caution, but I take some – I don't agree with Mr. Lewis. Obviously, I don't agree with Mr. Lewis's contention that I've conceded some point on the second issue. My argument there was to just simply refute what Maurice Sayles was arguing, which was he was suggesting that somehow Judge Case was wrong to push off on his sentence of 85 months by acknowledging that Maurice Sayles was a leader, whereas Martina Sayles was not. And, in fact, the inference of that argument was that Martina Sayles should have been found to be a leader as well and should have been given an enhancement as well. And my point was just simply to say if that had happened, it would have made the defendants even more similar, not less similar, even reinforcing the position of Judge Case that the sentences should have been the same. They should have received the same type of sentence. And then the third argument, of course, the argument concerning whether or not these sentences are unreasonable in and of themselves because they are above the guideline range, that's a stator that the court has to look at in terms of did the court below make an adequate record to support its findings. The court, I think, most certainly did. It went through the 3553A factors. It talked specifically about both defendants' substantial and lengthy criminal histories. You'll remember that both defendants were maxed out on their criminal history categories. They had criminal history categories of six. I believe one had a criminal history score of 27 and the other had a criminal history score of 28. I believe Mr. Martina Sayles had a score of 28 and the other had a score of 27. And as Judge Loken pointed out, while their crimes were different in some degree, they were also similar. Martina Sayles, his criminal history was, as has been already indicated, was primarily a forgery and counterfeit check writing, whereas Maurice Sayles had some history of drug activity in his criminal conviction, but he also had a history, I believe, of forgery-type convictions as well. So they were similar in terms of their criminal history. A judge case pointed that out, and he made quite a lengthy record about it in the record when he discussed their criminal histories, which I think supports his decision to upward depart to 85 months. Let me ask you this. One thing that does bother me here, in addition to your violation of the plea agreement, was the district court did not, in my opinion, explain very well the difference in the sentences or the substantial upward variance, particularly in Maurice's. Well, I thought he did, Your Honor. I guess I do disagree a little bit with that. Well, I want to hear that. I mean, I've read the transcript, but you were there. Right. Do you think the explanation was sufficient? Yes, I believe the explanation focuses on the criminal history, and I quoted a lengthy portion of Judge Case's dissertation from the bench where he talked about how what I say Mr. Sayles, I'm talking about Maurice, had received numerous convictions of the past and had not received any substantial prison time for them, and he felt, Judge Case did, that the more convictions you get, the greater your punishment ought to be, and he explained that that should actually increase punishment, not decrease punishment, suggesting that he felt it was appropriate to give a sentence above the applicable guideline range, and that's what I focused on in my appeal brief. I understand that there could be a difference of opinion on the issue. I certainly respect that, but I don't believe that Judge Case was trying to hide the ball here. He made it quite clear that the reason that he was sentencing these defendants to an above-guideline sentence in both cases was because of their lengthy and extensive criminal histories, and I think he made a similar type of finding in a Martina Sayles' case, which happened prior to Maurice Sayles' case. Your Honors, I don't have any excuse for, I'm sorry, Your Honor. Does the government have a position on the remedy question? Right. Well, if the court has applied to remand it back, I think you remand it back for re-sentencing. I don't believe the defendant has a right to withdraw from the plea agreement. I believe what happens in this particular case, as was suggested in the Lovelace case, is that a court have an opportunity to remand the case and re-sentence with the government making the right argument that it's supposed to make, a guideline sentence argument. I also, there's also a second subsidiary question that was raised by. That's very logical. It makes common sense, which I like, but just look at a contract law. You've reached the contract. The contract is void or voidable. Well, I mean, I'm not a contract attorney, and I hesitate with trepidation to try to. Excepting if I'm right, that if you make a material breach to a contract, it's voidable by the other party. Which means maybe they're not asking it to be voided. Right. That's true, Your Honor, and certainly I don't have case law to support my argument, so I do acknowledge that I could be wrong, but I also understand the idea of contract law is to make right what the breach made wrong. What this breach made wrong is I did not argue below for a sentence of 31 to 41 months. That's what I should have argued for. That was my mistake. So how do we make that right? By allowing the defendant to withdraw the plea altogether, that doesn't resolve that breach. All that does is it puts it back to the very beginning of the litigation. Resolving the breach is allowing the case to go back and me arguing for the right sentence, and then the defendant argues whatever sentence they argue for, and then that's the end of it. But that is an option. Again, it's hard to argue from clean hands here because I made a mistake. You would agree it's a material breach. I do agree. Well, again, I don't want to concede something that I'm not sure about. I don't know what material would mean. It is a breach that leads to plain error. Well, it's not a frivolous breach. I don't know. It's not a frivolous breach. It was a breach that was It goes to the essence of what the government was supposed to do at sentencing. Right. How many levels of breaches are there in your view of the work? Judge, I'm not going to quibble about it. It was a bad breach. Material, with the label of material, I'll concede that because it was a mistake. I'm glad I asked because I think parties can agree on a question of remedy. Yeah. Even if the law might take the court elsewhere. Right. Right, exactly. So at the end of the day, Your Honors, I mean, you have in your hands the opportunity to make right what you think was made wrong here. The government clearly conceives its mistake, and I regret it tremendously. I wish I had not done it. I wish I had been more cautious at that time when I had engaged in that action. But still, nonetheless, as I argued in my appeal brief, the real issue here is not the government's mistake as much as whether or not that mistake in and of itself requires us to go all the way back to the beginning of this litigation. And I don't think based upon the record that was made by Judge Case that we need to do that. The Loveless case, which was the case cited by the defendant himself in his brief, that court did not find that particular breach, which was just about as severe as the one that I engaged in, required a remand back for a sentencing on that issue because there was no way to show that the defendant would have received a more favorable sentence if the government had argued for what it was supposed to argue for. Were you aware of the mistake before the appeal was pending? I'm sorry? Were you aware of the mistake before the appeal was pending? No. When Ms. Sanders filed her brief, I became aware of it. Because it seems to me if you had caught it in time, you could have gone back to the district court. Right. Again, I'm not going to cast blame on anybody else. This is my fault. But I wish, I really do wish that when we were at that sentencing hearing, I would have had an objection on the other side to remind me of my obligation, and I would have said I'm sorry, I made a mistake, and I would have immediately corrected it. But I didn't get that. But that doesn't excuse I'm not blaming the defense attorney. That's my fault. And I've got to take responsibility for that. So I don't think I have anything else to add, Your Honors. If you have any questions, I'd be happy to entertain them about the other issues of the case. Okay. Thank you. Thank you, Your Honor. Mr. Bowling, does Mr. Lewis have any time? He has two and a half minutes. Three and a half minutes? Oh, wait a minute. Ms. Sanders has three and a half, right? I'm sorry, two and a half, right. Ms. Sanders. Okay. Mr. Lewis not doing rebuttal, is that it? No, Your Honor, I'm not. I see my time, so I can vote. Okay. Ms. Sanders. Your Honors, I would like to speak to the remedy briefly. Santabello, I believe, does – I don't think you need to. If the government agrees as to the remedy, we're not going to do something different than what the parties agree to. I would like to point out that Santabello also requires that the resentencing be in front of a different judge. That's the language of that case. That, I suspect, we would not follow. That's clearly not mandatory. Under Santabello, I believe it is. Pardon? Under Santabello, I believe that it is. The language says, although the fairness of the sentencing judge is not questioned, a breach requires sentencing and resentencing in front of a different judge. You couldn't get five justices for that today, but okay. I just want to reiterate that I do believe that there was – Mr. Maurice Sale's substantial rights were violated here by the government's argument, and I don't think that just by looking at Martinez's sentencing you can determine that that was not the case. I think there is a reasonable probability that, absent this breach and argument, Maurice would have received a different sentence. And I think that to dismiss this breach and brush it aside, speculating that he would have received the same sentence would be a mistake, and we just respectfully request for a resentencing. Unless there are further questions, we just simply request a resentencing. Thank you. Okay. Thank you all for your arguments and your concessions, and we will take it under advisement and be back in due course.